JACK RODIN, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (P&S Enterprises, Appellee).

First District (Industrial Commission Division)  No. 1—99—4486WC

Opinion filed September 28, 2000.

Rock, Fusco & Gravey, Ltd., of Chicago (Philip J. Rock, Michael R. Kolloway, and Ronald D. Menna, of counsel), for appellant.

Rusin, Patton, Maciorowski & Friedman, of Chicago (Randall R. Stark and Daniel P. Johnston, of counsel), for appellee.

JUSTICE HOFFMAN delivered the opinion of the court:

The claimant, Jack Rodin, filed an application for adjustment of claim under the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 1992)), seeking benefits for injuries he received as a result of an allergic reaction he experienced after eating food at a luncheon he was directed to attend by his employer, P&S Enterprises. Following a hearing, an arbitrator determined that the incident giving rise to the claimant's injuries occurred in the course of his employment. However, the arbitrator also found that: (1) the claimant suffered from a preexisting condition, (2) his allergic reaction could have happened at any time or anywhere, and (3) the claimant was not exposed to a greater risk because of his employment. Based upon these findings, the arbitrator denied benefits to the claimant.

The claimant sought a review of the arbitrator's decision before the Industrial Commission (Commission). The Commission affirmed and adopted the decision of the arbitrator, and the claimant sought judicial review in the circuit court of Cook County. The circuit court confirmed the Commission's decision, and the claimant filed the instant appeal. For the reasons that follow, we affirm.

The facts necessary for a resolution of this appeal are not in dispute. On January 27, 1993, the claimant was employed by P&S Enterprises (P&S), an electrical contractor, and was working as a foreman on a project at O'Hare International Airport. The claimant testified that, on that date, Pete Segura, the owner of P&S, directed him and P&S's general foreman, Mike Rovner, to attend a luncheon the following day that was being hosted by T-5, the project's general contractor. Segura directed the claimant and Rovner to attend the luncheon as representatives of P&S and to tell the other employees to attend also.

On January 28, 1993, at approximately 11:45 a.m., the claimant and Rovner went to the area where the buffet lunch hosted by T-5 was being served. The claimant selected salad, chicken, potatoes, and a diet soda. After eating the food he had selected, the claimant ate a second salad, which one his coworkers brought to him at his request. After eating, the claimant noticed nothing unusual, and he worked the remainder of the day, leaving for home at approximately 3:30 p.m.

According to the claimant, he felt fine when he arrived home from work at 4:30 p.m. on January 28, 1993. At about 5 to 5:30 p.m., he ate a light dinner, consisting of scrambled eggs and baked beans, that his wife prepared. The claimant testified that, about an hour after he finished eating, his forehead "felt like it was on fire" and he had an urge to go to the washroom. When he entered the washroom and looked in the mirror, he saw that he had a rash on his face. The claim-

ant stated that he told his wife that he was "burning up" and that he had "terrific cramps" in his stomach. While in the washroom, the plaintiff passed out, fell, and struck his nose on the bathtub.

The claimant was taken to Humana Hospital by paramedics. X rays taken at the hospital revealed that he had a fractured nose. According to Humana's records, the claimant suffered an anaphylactic reaction. He was released from the hospital on the following morning.

On January 30, 1993, the claimant began to experience pains in his back. He testified that the pain started in his lower back and went down his left leg. His wife transported him back to Humana Hospital, where he was admitted. While in the hospital, the claimant underwent a number of tests. Significant among these were X rays of his lumbosacral spine, which revealed moderate degenerative hypertrophic spurring at L3-4 and L4-5, and an MRI of his lumbosacral spine, which revealed central disc bulge at L4-5 and L5-S1 with some spurring. The claimant was hospitalized for 23 days. According to the claimant, he had never injured his lower back prior to January 28, 1993, and he never had any medical treatment for his back or left leg prior to that date.

The claimant had a history of allergies dating back to when he was seven or eight years old. He had several allergic reactions prior to January 1993 that resulted in his hospitalization. After being released from Humana Hospital in February 1993, the claimant came under the care of Dr. Anne Szpindor-Watson, a physician specializing in the treatment of allergies.

Dr. Watson testified that the claimant is allergic to wheat, shellfish, and preservatives. She stated that the allergy tests she performed on the claimant were negative for eggs, and she did not believe that baked beans could be the cause of the anaphylactic reaction he experienced on January 28, 1993. Dr. Watson opined that the claimant's allergic reaction was caused by preservatives in the food that he ate at the luncheon hosted by T-5. She based her opinion that the luncheon food contained preservatives on her belief that the law required catered food to contain preservatives. She could not, however, state which of the food items that the claimant consumed at the luncheon contained the preservatives that caused his allergic reaction.

■ An employee's injury is compensable under the Act only if it arises out of and in the course of his or her employment. 820 ILCS 305/2 (West 1998). Both elements must be present at the time of the claimant's injury in order to justify compensation (*Illinois Bell Telephone Co. v. Industrial Comm'n*, 131 Ill. 2d 478, 483, 546 N.E.2d 603 (1989)), and it is the claimant's burden to establish both elements by a preponderance of the evidence (*O'Dette v. Industrial Comm'n*, 79 Ill. 2d 249, 253, 403 N.E.2d 221 (1980)).

In this case, the Commission found that the claimant suffered an allergic reaction in the course of his employment but denied his claim for benefits on the basis that his injuries did not arise out of his employment. The claimant argues that the Commission's determination in this regard is against the manifest weight of the evidence. Although P&S argues in support of the Commission's determination that the claimant's injuries did not arise out of his employment, it also contends that there is no evidence in the record that can support a finding that the claimant sustained injuries in the course of his employment. However, because of our resolution of the issue raised by the claimant, we need not address P&S's latter contention. Even assuming for the sake of analysis that there is sufficient evidence in the record to support a finding that the incident that gave rise to the claimant's injuries occurred in the course of his employment, the Commission's determination that those injuries did not arise out of the claimant's employment is neither against the manifest weight of the evidence nor erroneous as a matter of law.

■ For an injury to arise out of a claimant's employment, it must have its origin in some risk incidental to the employment. *Eagle Discount Supermarket v. Industrial Comm'n*, 82 Ill. 2d 331, 338, 412 N.E.2d 492 (1980). The risk of injury must be peculiar to the claimant's work or it must be a risk to which the claimant, by reason of his employment, is exposed to a greater degree than the general public. *Orsini v. Industrial Comm'n*, 117 Ill. 2d 38, 45, 509 N.E.2d 1005 (1987). When the injury results from a hazard to which the claimant would have been equally exposed apart from his work, the injury cannot be said to arise out of his employment. *Brady v. Louis Ruffolo & Sons Construction Co.*, 143 Ill. 2d 542, 550, 578 N.E.2d 921 (1991). The Commission's determination that an injury arose out of a claimant's employment involves a question of fact, and its decision on the matter will not be disturbed on review unless it is against the manifest weight of the evidence. *Dodson v. Industrial Comm'n*, 308 Ill. App. 3d 572, 574, 720 N.E.2d 275 (1999).

The facts relevant to this issue are simple. The claimant, who has had allergies since early childhood, suffered an allergic reaction to food he ate at a luncheon he was directed to attend by his employer. Nothing in the record suggests that the food that the claimant ate was in any way contaminated or unwholesome.

Several cases cited by the arbitrator in his decision, which was adopted by the Commission, and by the parties in their respective briefs seem, at first blush, to be factually similar to the circumstances present in the instant case. However, a closer examination of these cases reveals that they can be distinguished.

In *Schwartz v. Industrial Comm'n*, 379 Ill. 139, 39 N.E.2d 980 (1942), benefits were denied to the surviving children of an individual who died as a result of having ingested poisonous food. The decedent consumed the food in a restaurant of his own selection to which he went for dinner during working hours. See *Schwartz*, 379 Ill. at 141-42. Although the decedent ingested the food in the course of his employment, the Illinois Supreme Court held that his death did not arise out of his employment, as there was no connection between his employment and the ingestion of the poisonous food. *Schwartz*, 379 Ill. at 146. Unlike the facts in this case, however, the employer in *Schwartz* exercised no control over the location where its employee ate his meal and gave him no instructions in that regard. Further, the deceased employee in *Schwartz* paid for his own meal. *Schwartz*, 379 Ill. at 143.

In *Permanent Construction Co. v. Industrial Comm'n*, 380 Ill. 47, 43 N.E.2d 557 (1942), an employee and the dependents of another employee were awarded benefits under the Act by reason of the employees having contracted typhoid fever from drinking contaminated water furnished by their employer. *Permanent Construction*, 380 Ill. at 48-49. However, unlike the circumstance in *Permanent Construction*, nothing in the record of this case suggests that the food served to the claimant was in any way contaminated or otherwise unfit for consumption by the general public.

In *Williams v. Industrial Comm'n*, 38 Ill. 2d 593, 232 N.E.2d 744 (1967), our supreme court held that the injuries that the claimant suffered after choking on a doughnut he was eating while working did not arise out of his employment. Although *Williams* appears to have been decided based on an application of the "personal-risk rule" (see 38 Ill. 2d at 596), the court pointed out that the claimant supplied the doughnut upon which he choked (see 38 Ill. 2d at 595). Unlike the facts in *Williams*, the claimant in this case did not supply the food that caused his allergic reaction; rather, it was given to him by the host of a luncheon his employer directed him to attend.

■ In an effort to determine whether it can be said that the claimant's allergic reaction arose out of his employment, we must first categorize the risk. "[R]isks that an employee may be exposed to are categorized into three groups: (1) risks distinctly associated with employment, (2) risks personal to the employee, and (3) neutral risks that have no particular employment or personal characteristics." *Illinois Consolidated Telephone Co. v. Industrial Comm'n*, 314 Ill. App. 3d 347, 352, 732 N.E.2d 49 (2000) (Rakowski, J., specially concurring, joined by McCullough, P.J.).

■ The risk of an allergic reaction to wholesome food was not a

risk inherent in the claimant's employment as a foreman of an electrical contractor. Consequently, the risk is not an employment risk or one distinctly associated with his employment. Neither can it be said that it is totally neutral or void of personal characteristics. In this case, the risk to which the claimant was exposed was one personal to him. See *Illinois Consolidated Telephone Co.*, 314 Ill. App. 3d at 352 (Rakowski, J., specially concurring, joined by McCullough, P.J.).

Injuries resulting from personal risks generally do not arise out of employment. An exception to this rule exists when the work place conditions significantly contribute to the injury or expose the employee to an added or increased risk of injury. See *Illinois Consolidated Telephone Co.*, 314 Ill. App. 3d at 352-53 (Rakowski, J., specially concurring, joined by McCullough, P.J.). Whether an injury resulting from personal risk arises out of a claimant's employment is determined by whether he was exposed to a risk greater than that to which the general public is exposed. *Illinois Consolidated Telephone Co.*, 314 Ill. App. 3d at 352-53 (Rakowski, J., specially concurring, joined by McCullough, P.J.).

In its "Decision and Opinion on Review," the Commission found that the claimant "suffered a [*sic*] allergic reaction which was personal to him and not the result of an increased risk of his employment." Based on the record, it cannot be said that the Commission's determination in this regard is against the manifest weight of the evidence.

Nothing in the record even suggests that the food that caused the claimant's allergic reaction was unwholesome or unfit for consumption or that it posed any risk to the general public. The risk that the claimant might have an allergic reaction to food containing preservatives is unrelated to his employment and is a risk to which he would have been equally exposed apart from his work. If, as in this case, a claimant's injury is the result of a risk to which he would have been equally exposed apart from his employment, it is not compensable. *Caterpillar Tractor Co. v. Industrial Comm'n*, 129 Ill. 2d 52, 62-63, 541 N.E.2d 665 (1989). The fact that the claimant would not have consumed the food that caused his reaction had he not been ordered to attend the T-5 luncheon does not, standing alone, mandate a finding that his allergic reaction arose out of his employment, as Illinois has never adopted the positional risk doctrine. *Brady*, 143 Ill. 2d at 552.

1230

Based upon the foregoing analysis, we affirm the judgment of the circuit court confirming the Commission's decision in this matter.

Affirmed.

McCULLOUGH, P.J., and COLWELL, HOLDRIDGE, and RAR-ICK, JJ., concur.