**2020 IL 124848**


# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 124848)

KEVIN McALLISTER, Appellant, v. THE ILLINOIS WORKERS' COMPENSATION COMMISSION *et al.* (North Pond, Appellee).

*Opinion filed September 24, 2020.*


JUSTICE NEVILLE delivered the judgment of the court, with opinion.

Chief Justice Anne M. Burke and Justices Kilbride, Garman, Karmeier, and Theis concurred in the judgment and opinion.

Justice Michael J. Burke took no part in the decision.


## OPINION

¶ 1    Claimant, Kevin McAllister, injured his right knee while working as a sous-chef for his employer, North Pond restaurant. The arbitrator awarded workers' compensation benefits to claimant, but the Illinois Workers' Compensation Commission (Commission) reversed the decision, finding that the injury did not "arise out of" the claimant's employment. The circuit court of Cook County

affirmed the Commission's decision, and the Appellate Court, Workers' Compensation Commission Division, affirmed the judgment of the circuit court. 2019 IL App (1st) 162747WC, ¶ 76. We granted claimant's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. July 1, 2018).

¶ 2     We hold that the Commission's finding, that the claimant's accidental knee injury did not arise out of his employment, is against the manifest weight of the evidence. Accordingly, we reverse the Commission's decision and the judgments of the lower courts, and we remand with directions.

¶ 3                                      I. BACKGROUND

¶ 4     Claimant filed an application for adjustment of claim, pursuant to the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 2014)), and sought benefits for an injury he sustained to his right knee in August 2014. At the arbitration hearing, claimant testified that he works as a sous-chef for North Pond restaurant. His job duties include checking in orders, arranging the restaurant's walk-in cooler, making sauces, and prepping and cooking food.

¶ 5     On August 7, 2014, the date of the accident, claimant was working at the restaurant setting up his station for the evening shift when another cook mentioned that he may have misplaced a pan of carrots in the walk-in cooler. Claimant went into the walk-in cooler to locate the pan of carrots, and while kneeling on both knees, he checked the top, middle, and bottom shelves. Claimant explained that sometimes food items get knocked underneath the bottom shelves.

¶ 6     As claimant attempted to stand up from his kneeling position, he felt his right knee "pop." The knee "locked up," and he could not straighten his leg. Claimant hopped over to a table, stood there for a minute, and then hopped into his boss's office to sit down and tell him what happened. After discussing the accident with his boss, the general manager of the restaurant drove claimant to the hospital emergency room.

¶ 7     Claimant had previously injured his right knee in August 2013 and underwent surgery to repair the injury. He received workers' compensation benefits for the

- 2 -

injury. Claimant returned to full-time work duties after recovering from the 2013 injury.

¶ 8        On August 11, 2014, claimant saw Dr. David Garelick, the orthopedic surgeon with the Illinois Bone & Joint Institute, who had performed the 2013 surgery on claimant's right knee. The doctor ordered claimant to undergo a magnetic resonance imaging (MRI) scan of his right knee, which revealed a retearing of the medial meniscus. Surgery was recommended and subsequently performed on August 15, 2014. Claimant testified that he paid out-of-pocket for his surgery and anesthesia.

¶ 9        Following the surgery, claimant was prescribed pain medication and physical therapy. Although eight physical therapy sessions were recommended, claimant testified that he only attended four physical therapy sessions because he was paying out-of-pocket for the therapy sessions and he was familiar with the exercises as a result of his prior knee injury. On September 15, 2014, claimant returned to full-time work without restrictions. Claimant testified that his job typically requires him to be on his feet for 9 to 15 hours a day, which causes his right leg to feel sore and used. He takes ibuprofen or aspirin for his pain several times a week.

¶ 10       On cross-examination, claimant testified that he knelt down on the floor on both knees in the walk-in cooler to look for the pan of carrots. While claimant did not have both hands on the floor, at times he used his hands to hold himself up. Claimant agreed that his position on the floor was similar to the position he would be in if he were looking for something underneath his bed. Claimant did not find the pan of carrots, and when he stood up from the kneeling position, he was not holding anything in his hands.

¶ 11       Claimant testified that the floor in the walk-in cooler is always wet, but he did not notice any cracks and he did not trip over anything or strike his knee on anything. Rather, claimant simply stood up from a kneeling position and then felt his right knee "pop" and "lockup." Claimant did not receive any workers' compensation benefits while he was off work from August 7, 2014, until Dr. Garelick released him to return to work on September 15, 2014.

¶ 12                          A. Arbitrator's Decision

¶ 13    The arbitrator found that claimant's act of looking for the misplaced pan of carrots in the walk-in cooler was an act the employer reasonably could have expected claimant to perform in order to fulfill his duties as a sous-chef. Accordingly, the arbitrator concluded that claimant's knee injury "arose out of" and occurred in the course of his employment with the restaurant and was covered under the Act.

¶ 14    The arbitrator awarded claimant temporary total disability (TTD) benefits, permanent partial disability (PPD) benefits, and medical expenses. In addition, the arbitrator determined that the employer's refusal to pay claimant's TTD benefits and medical expenses was dilatory, retaliatory, and objectively unreasonable and, as a result, imposed penalties under section 19(k) and section 19(*l*) of the Act (820 ILCS 305/19(k), (*l*) (West 2014)) and also awarded claimant attorney fees under section 16a of the Act (*id.* § 16a).

¶ 15                          B. The Commission's Decision

¶ 16    The employer sought review of the arbitrator's decision before the Commission. The Commission, with one commissioner dissenting, set aside the arbitrator's decision, finding that claimant failed to prove that his knee injury "arose out of" his employment because he "was subjected to a neutral risk which had no particular employment or personal characteristics." The Commission found that claimant's knee injury did not result from an employment-related risk but rather from a neutral risk of standing up from a kneeling position, which had no "peculiar" employment characteristics. The Commission determined that claimant had not established that he was exposed to this neutral risk to a greater degree than the general public. One commissioner dissented, stating that he would have affirmed the arbitrator's decision in its entirety.

¶ 17                          C. Circuit Court Decision

¶ 18    Claimant appealed to the circuit court of Cook County, which affirmed the majority decision of the Commission. The circuit court agreed with the

Commission that claimant's act of standing up from a kneeling position was a neutral risk that did not expose claimant to more risk than that to which the general public was exposed. The circuit court found that the Commission correctly decided that claimant had been subjected to a noncompensable neutral risk and that the Commission's decision was not against the manifest weight of the evidence.

¶ 19                           D. Appellate Court Decision

¶ 20        Claimant appealed to the Appellate Court, Workers' Compensation Commission Division, where a majority of the court affirmed the judgment of the circuit court, which affirmed the Commission's decision. 2019 IL App (1st) 162747WC, ¶ 76. All five justices agreed with the Commission's determination that claimant was not injured due to an employment-related risk and that the determination was not against the manifest weight of the evidence. *Id.* ¶ 73; see *id.* ¶ 79 (Holdridge, P.J., specially concurring, joined by Hoffman, J.). However, the panel disagreed on whether a compensable injury can arise out of an employee's employment when the employee is injured while performing job duties that involve common bodily movements or routine "everyday activities" such as bending, twisting, reaching, or standing up from a kneeling position.

¶ 21        The appellate majority cited *Caterpillar Tractor Co. v. Industrial Comm'n*, 129 Ill. 2d 52 (1989), for the proposition that an injury arises out of a claimant's employment for purposes of the Act if, at the time of injury, the claimant was performing an act that he might reasonably be expected to perform incident to his employment or causally connected to what the claimant must do to fulfill his assigned job duties, even if the act involves an everyday activity. 2019 IL App (1st) 162747WC, ¶¶ 41, 50-51 (majority opinion). However, the appellate majority determined that claimant's knee injury did not arise out of his employment because "[t]he risk posed to claimant from the act of standing from a kneeling position while looking for something that had been misplaced by a coworker was arguably not distinctly related to his employment." *Id.* ¶ 73.

¶ 22        Two specially concurring justices took a different position and cited *Adcock v. Illinois Workers' Compensation Comm'n*, 2015 IL App (2d) 130884WC, for the proposition that a claimant who is injured while performing an everyday activity such as standing up from a kneeling position could only obtain compensation under

the Act if he could establish that his job duties required him to engage in that activity to a greater degree than the general public, even in situations where the activity is directly related to the claimant's job duties. 2019 IL App (1st) 162747WC, ¶¶ 80-81, 83 (Holdridge, P.J., specially concurring, joined by Hoffman, J.)

¶ 23                             E. Petition for Rehearing

¶ 24       Claimant filed a petition with the appellate court for a rehearing or, in the alternative, for a finding that the case involved a substantial question that warranted consideration by our court under Illinois Supreme Court Rule 315(a) (eff. July 1, 2018). The Appellate Court denied the petition for rehearing, but four justices voted to grant the request for certification under Rule 315(a). Claimant filed a petition for leave to appeal, which we granted. We also allowed the Illinois Trial Lawyers Association to file an *amicus curiae* brief in support of claimant's position. Ill. S. Ct. R. 345 (eff. Sept. 20, 2010).

¶ 25                                II. ANALYSIS

¶ 26                           A. The Standard of Review

¶ 27       The parties disagree about the applicable standard of review. Claimant contends that the facts related to the circumstances surrounding his knee injury are undisputed and susceptible to only one reasonable inference: that he was injured while performing an act that he might reasonably be expected to perform incident to his assigned duties as a sous-chef. Claimant maintains that because these facts are undisputed and susceptible to only a single inference, the appropriate standard of review is *de novo*.

¶ 28       The employer counters that, although the facts relating to the circumstances surrounding the way claimant's knee injury occurred are undisputed, those facts are subject to more than a single inference and, therefore, the proper standard of review is whether the Commission's finding was against the manifest weight of evidence. Specifically, the employer argues that "the facts could support different inferences as to whether the physical act [claimant] was performing at the time of his injury

- 6 -

was incidental to his employment as a sous chef." The employer also contends that "different inferences could be drawn as to whether the risk of injury was in some way enhanced by [claimant's] employment." We agree with the employer.

¶ 29 In this case, the undisputed facts relating to the circumstances surrounding the way in which claimant's injury occurred are susceptible to more than a single inference. See *Brady v. Louis Ruffolo & Sons Construction Co.*, 143 Ill. 2d 542, 549 (1991). "If undisputed facts upon any issue permit more than one reasonable inference to be drawn therefrom, the determination of such issue presents a question of fact ***." *Orsini v. Industrial Comm'n*, 117 Ill. 2d 38, 44 (1987).

¶ 30 "The Industrial Commission is the ultimate decisionmaker in workers' compensation cases ***." *Durand v. Industrial Comm'n*, 224 Ill. 2d 53, 63 (2006). It is the function of the Commission to decide questions of fact and causation, to judge the credibility of witnesses, and to resolve conflicting medical evidence. *O'Dette v. Industrial Comm'n*, 79 Ill. 2d 249, 253 (1980). The question of whether a claimant's injury arose out of his or her employment is typically a question of fact to be resolved by the commission, whose finding will not be disturbed unless it is against the manifest weight of the evidence. *Johnson Outboards v. Industrial Comm'n*, 77 Ill. 2d 67, 71 (1979); *Illinois Valley Irrigation, Inc. v. Industrial Comm'n*, 66 Ill. 2d 234, 239 (1977) (citing *Warren v. Industrial Comm'n*, 61 Ill. 2d 373, 376 (1975)). The Commission's factual findings are against the manifest weight of the evidence only when an opposite conclusion is clearly apparent—that is, when no rational trier of fact could have agreed with the agency. *Durand*, 224 Ill. 2d at 64; *Beelman Trucking v. Illinois Workers' Compensation Comm'n*, 233 Ill. 2d 364, 370 (2009). Although reviewing courts are reluctant to conclude that a factual determination of the Commission is against the manifest weight of the evidence (*Hannibal, Inc. v. Industrial Comm'n*, 38 Ill. 2d 473, 478 (1967); *Electro-Motive Division, General Motors Corp. v. Industrial Comm'n*, 25 Ill. 2d 467, 472 (1962)), " 'we will not hesitate to do so when the clearly evident, plain, and undisputable weight of the evidence compels an opposite conclusion' " (*Moran v. Illinois Workers' Compensation Comm'n*, 2016 IL App (1st) 151366WC, ¶ 35 (quoting *Mlynarczyk v. Illinois Workers' Compensation Comm'n*, 2013 IL App (3d) 120411WC, ¶ 17); *Dye v. Illinois Workers' Compensation Comm'n*, 2012 IL App (3d) 110907WC, ¶ 10; *Montgomery Elevator Co. v. Industrial Comm'n*, 244 Ill.

App. 3d 563, 567 (1993)).

¶ 31                   B. Proof Required to Obtain Workers' Compensation Benefits

¶ 32        The Act is a remedial statute, which should be liberally construed to effectuate its main purpose of providing financial protection for injured workers. *Interstate Scaffolding, Inc. v. Illinois Workers' Compensation Comm'n*, 236 Ill. 2d 132, 149 (2010). According to the Act, in order for a claimant to be entitled to workers' compensation benefits, the injury must "aris[e] out of" and occur "in the course of" the claimant's employment. 820 ILCS 305/1(d) (West 2014). Case law interpreting the Act makes it clear that both elements must be present at the time of the accidental injury in order to justify compensation. *Orsini*, 117 Ill. 2d at 44-45; *Illinois Bell Telephone Co. v. Industrial Comm'n*, 131 Ill. 2d 478, 483 (1989); *Free King Oil Co. v. Industrial Comm'n*, 62 Ill. 2d 293, 294 (1976); *Wise v. Industrial Comm'n*, 54 Ill. 2d 138, 142 (1973). Therefore, in order to obtain compensation under the Act, a claimant bears the burden of proving by a preponderance of the evidence two elements: (1) that the injury occurred in the course of claimant's employment and (2) that the injury arose out of claimant's employment. *Sisbro, Inc. v. Industrial Comm'n*, 207 Ill. 2d 193, 203 (2003) (collecting cases).

¶ 33                                   1. Course of Employment

¶ 34        The phrase "in the course of employment" refers to the time, place, and circumstances of the injury. *Scheffler Greenhouses, Inc. v. Industrial Comm'n*, 66 Ill. 2d 361, 366-67 (1977). "A compensable injury occurs 'in the course of' employment when it is sustained while a claimant is at work or while he performs reasonable activities in conjunction with his employment." *Wise*, 54 Ill. 2d at 142. In this case, the employer does not dispute that the evidence established that at the time claimant sustained his knee injury he was at work performing activities in conjunction with his employment. Because the parties do not dispute that claimant's knee injury occurred in the course of his employment, we only need to address the second element that must be proved to be entitled to compensation, whether claimant's knee injury arose out of his employment.

¶ 35                                2. Arising Out of Employment

¶ 36        "The 'arising out of' component is primarily concerned with causal connection.
To satisfy this requirement it must be shown that the injury had its origin in some
risk connected with, or incidental to, the employment so as to create a causal
connection between the employment and the accidental injury." *Sisbro*, 207 Ill. 2d
at 203 (citing *Caterpillar Tractor*, 129 Ill. 2d at 58); see also *Baggett v. Industrial
Comm'n*, 201 Ill. 2d 187, 194 (2002) ("An injury 'arises out of' one's employment
if it originates from a risk connected with, or incidental to, the employment,
involving a causal connection between the employment and the accidental injury.").
A risk is incidental to the employment when it belongs to or is connected with what
the employee has to do in fulfilling his or her job duties. *Orsini*, 117 Ill. 2d at 45.
To determine whether a claimant's injury arose out of his or her employment, we
must categorize the risks to which the claimant was exposed. *Dukich v. Illinois
Workers' Compensation Comm'n*, 2017 IL App (2d) 160351WC, ¶ 31; *Mytnik v.
Illinois Workers' Compensation Comm'n*, 2016 IL App (1st) 152116WC, ¶ 38;
*Baldwin v. Illinois Workers' Compensation Comm'n*, 409 Ill. App. 3d 472, 478
(2011); *First Cash Financial Services v. Industrial Comm'n*, 367 Ill. App. 3d 102,
105 (2006).

¶ 37                                a. *The Three Categories of Risk*

¶ 38        Generally, all risks to which a claimant may be exposed fall within one of three
categories. See *Steak 'n Shake v. Illinois Workers' Compensation Comm'n*, 2016
IL App (3d) 150500WC, ¶ 34; *Springfield Urban League v. Illinois Workers'
Compensation Comm'n*, 2013 IL App (4th) 120219WC, ¶ 27; *Illinois Institute of
Technology Research Institute v. Industrial Comm'n*, 314 Ill. App. 3d 149, 162
(2000); *Rodin v. Industrial Comm'n*, 316 Ill. App. 3d 1224, 1228 (2000); 1 Arthur
Larson *et al.*, Larson's Workers' Compensation Law §§ 4.01-4.03, at 4-2 to 4-3
(2020). The three categories of risks recognized by the case law are "(1) risks
distinctly associated with the employment; (2) risks personal to the employee; and
(3) neutral risks which have no particular employment or personal characteristics."
*Illinois Institute of Technology Research Institute*, 314 Ill. App. 3d at 162; *Baldwin*,
409 Ill. App. 3d at 478; *First Cash Financial Services*, 367 Ill. App. 3d at 105.

¶ 39                                      i. Employment Risks

¶ 40          The first category of risks involves risks that are distinctly associated with
employment. "Employment risks include the obvious kinds of industrial injuries
and occupational diseases and are universally compensated." *Illinois Institute of
Technology Research Institute*, 314 Ill. App. 3d at 162. Examples of employment-
related risks include "tripping on a defect at the employer's premises, falling on
uneven or slippery ground at the work site, or performing some work-related task
which contributes to the risk of falling." *First Cash Financial Services*, 367 Ill.
App. 3d at 106. Injuries resulting from a risk distinctly associated with employment
are deemed to arise out of the claimant's employment and are compensable under
the Act. *Steak 'n Shake*, 2016 IL App (3d) 150500WC, ¶ 35.

¶ 41                              ii. Risks Personal to the Employee

¶ 42          The second category of risks involves risks personal to the employee. "Personal
risks include nonoccupational diseases, injuries caused by personal infirmities such
as a trick knee, and injuries caused by personal enemies and are generally
noncompensable." *Illinois Institute of Technology Research Institute*, 314 Ill. App.
3d at 162-63; see also *Illinois Consolidated Telephone Co. v. Industrial Comm'n*,
314 Ill. App. 3d 347, 352 (2000) (Rakowski, J., specially concurring) (examples of
personal risks include falls due to a bad knee or an episode of dizziness). "Injuries
resulting from personal risks generally do not arise out of employment. An
exception to this rule exists when the work place conditions significantly contribute
to the injury or expose the employee to an added or increased risk of injury." *Rodin*,
316 Ill. App. 3d at 1229.

¶ 43                                        iii. Neutral Risks

¶ 44          The third category of risks involves neutral risks that have no particular
employment or personal characteristics. *Illinois Consolidated Telephone Co.*, 314
Ill. App. 3d at 353 (Rakowski, J., specially concurring). "Neutral risks include stray

bullets, dog bites, lunatic attacks, lightning strikes, bombing, and hurricanes." *Illinois Institute of Technology Research Institute*, 314 Ill. App. 3d at 163. "Injuries resulting from a neutral risk generally do not arise out of the employment and are compensable under the Act only where the employee was exposed to the risk to a greater degree than the general public." *Springfield Urban League*, 2013 IL App (4th) 120219WC, ¶ 27. "Such an increased risk may be either qualitative, such as some aspect of the employment which contributes to the risk, or quantitative, such as when the employee is exposed to a common risk more frequently than the general public." *Metropolitan Water Reclamation District of Greater Chicago v. Illinois Workers' Compensation Comm'n*, 407 Ill. App. 3d 1010, 1014 (2011).

¶ 45                               b. *Type of Risk to Which Claimant Was Exposed*

¶ 46        The first step in risk analysis is to determine whether the claimant's injuries arose out of an employment-related risk—a risk distinctly associated with the claimant's employment. *Mytnik*, 2016 IL App (1st) 152116WC, ¶ 39; *Steak 'n Shake*, 2016 IL App (3d) 150500WC, ¶ 38. As noted above, a risk is distinctly associated with an employee's employment if, at the time of the occurrence, the employee was performing (1) acts he or she was instructed to perform by the employer, (2) acts that he or she had a common-law or statutory duty to perform, or (3) acts that the employee might reasonably be expected to perform incident to his or her assigned duties. *Caterpillar Tractor*, 129 Ill. 2d at 58; see also *The Venture—Newberg-Perini, Stone & Webster v. Illinois Workers' Compensation Comm'n*, 2013 IL 115728, ¶ 18; *Sisbro*, 207 Ill. 2d at 204.

¶ 47        We find that claimant's knee injury arose out of an employment-related risk because the evidence establishes that at the time of the occurrence his injury was caused by one of the risks distinctly associated with his employment as a sous-chef. The evidence established that the acts that caused claimant's knee injury (kneeling down on the floor in the walk-in cooler to look for a pan of carrots misplaced by a coworker and then standing up from the kneeling position injuring his knee) were risks incident to his employment because these were acts his employer might reasonably expect him to perform in fulfilling his assigned job duties as a sous-chef. See, *e.g.*, *Orsini*, 117 Ill. App. 2d at 45; *Ace Pest Control, Inc. v. Industrial Comm'n*, 32 Ill. 2d 386, 388 (1965).

- 11 -

¶ 48     It is generally recognized that an employee who sustains an injury while rendering reasonably needed assistance to a coworker in furtherance of the employer's business is considered to have suffered an injury arising out of and in the course of employment when the act performed is within the reasonable contemplation of what the employee may do in the service of the employer. *Wright v. Beverly Fabrics, Inc.*, 115 Cal. Rptr. 2d 503, 509-10 (Ct. App. 2002) (citing *Scott v. Pacific Coast Borax Co.*, 294 P.2d 1039, 1044 (Cal. Ct. App. 1956) (collecting cases)); see, *e.g.*, *Peel v. Industrial Comm'n*, 66 Ill. 2d 257, 260 (1977) ("since the accidental injury was sustained while [claimant] was assisting in the removal of the vehicle which was blocking the only usable entrance to the company's property, it plainly was incidental to his employment"); see 99 C.J.S. *Workers' Compensation* § 407 (2000) (titled "Acts for benefit of coemployee").

¶ 49     Stated otherwise, "injuries sustained while extending ordinary courtesies to fellow employees are within the reasonable incidents of the employment." 99 C.J.S. *Workers' Compensation* § 454, at 502-03 (2013). "The modern rule brings within the course of employment any activity undertaken in good faith by one employee to assist a co-employee in the latter's performance of his work." Larson, *supra* § 27.01[1], at 27-2 (titled "Helping Co-Employee With His Work"). As Professor Larson's treatise explains: "The reason for this holding is simple: it would be contrary not only to human nature but to the employer's best interests to forbid employees to help each other on pain of losing compensation benefits for any injuries thereby sustained." Larson, *supra* § 27.01[2], at 27-3 to 27-4.

¶ 50     In the instant case, claimant testified that he was a sous-chef responsible for "checking in orders, arranging the walk-in [cooler], making sauces, prepping [food], and cooking." Because one of claimant's job duties was to arrange the walk-in cooler, once he learned that a fellow chef had misplaced a pan of carrots in the walk-in cooler, it would be reasonable for claimant's employer to expect claimant to go into the walk-in cooler to assist the coworker look for the pan of carrots because he would be most familiar with where food would be located in the cooler.

¶ 51     Given that he was responsible for arranging the walk-in cooler, claimant had a duty to find misplaced food, including carrots, kept in the walk-in cooler. The evidence clearly established that, at the time claimant kneeled down on the floor in the walk-in cooler to look for the misplaced pan of carrots and then stood up from

that kneeling position and injured his knee, he was not only assisting a coworker in the furtherance of the employer's business, he was also performing an act his employer might reasonably expect him to perform incident to fulfilling his assigned job duties as a sous-chef in arranging the walk-in cooler. See, *e.g.*, *Ransdell v. International Shoe Co.*, 44 S.W.2d 1, 2 (Mo. 1931) (claimant's injury arose out her employment because "she was not only aiding a fellow employee, but was performing a natural service to her employer").

¶ 52    Claimant's knee injury arose out of his employment because at the time claimant injured his knee searching for a coworker's misplaced pan of carrots, he was at work performing an act his employer might reasonably expect him to perform incident to his assigned job duties as a sous-chef who arranged the restaurant's walk-in cooler. Therefore, the knee injury was employment related, as it was caused by kneeling and standing while assisting a coworker's search for carrots in the walk-in cooler—acts that were incident to and causally connected to claimant's job duties as an arranger of the walk-in cooler. *Caterpillar Tractor*, 129 Ill. 2d at 58; *Memorial Medical Center v. Industrial Comm'n*, 72 Ill. 2d 275, 280 (1978) (" 'to come within the statute the employee need only prove that some act or phase of the employment was a causative factor of the resulting injury' " (quoting *County of Cook v. Industrial Comm'n*, 69 Ill. 2d 10, 17 (1977))). Accordingly, we find that the claimant's knee injury arose out of his employment.

¶ 53                          C. Manifest Weight of the Evidence

¶ 54    In light of the preceding, we must determine whether the Commission's finding that claimant's injury was not employment related was against the manifest weight of the evidence. Specifically, the Commission found that claimant's "act of standing up after having kneeled on one occasion was not particular to [claimant's] employment and it just have easily could have occurred while [claimant], similar to a member of the general public, was performing this task in any other area of his life whether it be looking under his car in the driveway or picking up an item that dropped underneath his bed." As a result, the Commission found that "[claimant] was subjected to a neutral risk which had no particular employment or personal characteristics."

¶ 55 The appellate court found that "it was the Commission's prerogative to find claimant's act of searching for the misplaced pan of food was too remote from the specific requirements of his employment to be considered incidental to his assigned duties." 2019 IL App (1st) 162747WC, ¶ 73. Consequently, the appellate court found that "the Commission's determination that claimant was not injured due to an employment risk was supported by the record and not against the manifest weight of the evidence." *Id.*

¶ 56 We disagree with the Commission's finding that claimant's accidental knee injury was not employment related or incident to his employment because the injury was the result of a neutral risk, *i.e.*, an injury caused by something unrelated to an employee's employment such as a stray bullet, dog bite, a bombing injury, or a hurricane injury. *Illinois Institute of Technology Research Institute*, 314 Ill. App. 3d at 163. We find the evidence establishes that claimant's knee injury was caused by an employment-related risk because claimant testified that one of his duties as a sous-chef was to arrange food in the walk-in cooler. At the time claimant injured his knee, the evidence established that he was at work kneeling and standing while searching for a coworker's misplaced pan of carrots in the walk-in cooler. Because claimant was assisting another chef with his work in the walk-in cooler, he was fulfilling his duties of arranging food in the walk-in cooler and was engaged in work that his employer would have reasonably expected him to perform. Therefore, because claimant injured his knee while assisting a coworker searching for a misplaced pan of carrots and because he was kneeling and standing on the floor of the walk-in cooler he had a duty to arrange, claimant was performing a job-related task that was causally connected and incident to his assigned duties as a sous-chef. There is no evidence in the record that rebuts claimant's testimony that one of his job duties was to arrange food in the walk-in cooler. Claimant has proven by a preponderance of the evidence not only that his knee injury occurred in the course of his employment but that it also arose out his employment. Accordingly, we find the Commission's contrary finding to be against the manifest weight of the evidence.

¶ 57 D. Injuries Caused by Common Bodily Movements

¶ 58       Next, we must determine whether a compensable injury can "arise out of" an employee's employment when the employee was injured performing job duties that involve common bodily movements or everyday activities. The appellate court majority held that claims involving common bodily movements and everyday activities should be analyzed under the *Caterpillar Tractor* test, without engaging in additional neutral-risk analysis. 2019 IL App (1st) 162747WC, ¶¶ 34-73; see, *e.g.*, *Steak 'n Shake*, 2016 IL App (3d) 150500WC, ¶¶ 37-38 (waitress who injured her hand wiping down table suffered an employment-related injury because at the time of the occurrence she was engaging in an activity her employer might reasonably expect her to perform in the fulfillment of her job duties, and therefore, it was unnecessary to engage in a neutral-risk analysis to determine whether her job required her to perform this movement more frequently than members of the general public); *Mytnik*, 2016 IL App (1st) 152116WC, ¶¶ 43-45 (assembly-line worker who injured his back reaching down to grab a bolt that had fallen onto the assembly line suffered an employment-related injury because "the risk associated with claimant's act of bending to pick up the bolt was a risk distinctly associated with his employment"); *Young v. Illinois Worker' Compensation Comm'n*, 2014 IL App (4th) 130392WC, ¶¶ 22-24 (inspector who injured his shoulder bending down and reaching into a box to retrieve a machine part for inspection suffered an employment-related injury because at the time of the occurrence he was engaging in an activity his employer might reasonably expect him to perform in the fulfillment of his job duties, and therefore it was unnecessary to engage in a neutral-risk analysis to determine whether his job required him to perform this movement more frequently than members of the general public).

¶ 59       The special concurrence argued, relying on *Adcock* and its progeny, that claims involving common bodily movements and everyday activities should be analyzed under the neutral-risk doctrine and that recovery of workers' compensation benefits should be allowed only if claimant can establish that he or she was exposed to a risk of injury, either qualitatively or quantitatively, to a greater degree than the general public. 2019 IL App (1st) 162747WC, ¶¶ 79-115 (Holdridge, P.J., specially concurring, joined by Hoffman, J.); see, *e.g.*, *Adcock*, 2015 IL App (2d) 130884WC, ¶¶ 3, 39 (welder who injured his knee turning in his swivel chair to perform welding task required to show that his job required him to perform this movement more frequently than members of the general public or in a manner that increased the risk of injury); *Kemp v. Industrial Comm'n*, 264 Ill. App. 3d 1108,

1110-11 (1994) (field representative who injured his back squatting down to read air gauge required to show that his job required him to perform this movement more frequently than members of the general public); *Komatsu Dresser Co. v. Industrial Comm'n*, 235 Ill. App. 3d 779, 788 (1992) (machinist who injured his back bending down and lifting machine parts weighing between 30 and 40 pounds required to show that his job required him to perform this movement more frequently than members of the general public).

¶ 60    We hold that *Caterpillar Tractor* prescribes the proper test for analyzing whether an injury "arises out of" a claimant's employment when the claimant is injured performing job duties involving common bodily movements or routine "everyday activities." In analyzing whether an injury resulting from an everyday activity or common bodily movement arises out of a claimant's employment it must first be determined whether the employee was injured performing one of the three categories of employment-related acts delineated in *Caterpillar Tractor*. *Caterpillar Tractor*, 129 Ill. 2d at 58; see also *The Venture—Newberg-Perini, Stone & Webster*, 2013 IL 115728, ¶ 18; *Sisbro*, 207 Ill. 2d at 204.

¶ 61    If it is established that the risk of injury falls within one of the three categories of employment-related acts delineated in *Caterpillar Tractor*—risks that are distinctly associated with employment—then it is established that the injury "arose out of" the employment. See, *e.g.*, *Autumn Accolade v. Illinois Workers' Compensation Comm'n*, 2013 IL App (3d) 120588WC, ¶ 18 (claimant, a caregiver at an assisted-care facility who twisted her body and injured her neck assisting a resident in the shower, sustained an injury arising out her employment where she was attempting to ensure the safety of the resident, which was "an act which claimant might reasonably be expected to perform incident to her assigned duties"); *O'Fallon School District No. 90 v. Industrial Comm'n*, 313 Ill. App. 3d 413, 416-17 (2000) (claimant-teacher who twisted her body and injured her back pursuing student running down hallway sustained an injury arising out her employment where she "was ordered specifically to undertake the risk of pursuing a running student"); *County of Peoria v. Industrial Comm'n*, 31 Ill. 2d 562, 566 (1964) (off-duty sheriff's deputy who sustained fatal injuries while assisting motorist was subject to an employment-related risk rather than a neutral risk because "aiding distressed motorists and vehicles was one of the normal, incidental functions of all deputy sheriffs").

¶ 62      *Caterpillar Tractor* has not been overruled and remains the starting point for analyzing "arising out of" injuries, even those that involve common bodily movements and everyday activities. Only if it is established that the risk of injury for a worker who was on the job does not fall within one of the three categories of employment-related acts delineated in *Caterpillar Tractor* should the Commission consider applying a neutral-risk analysis. See, *e.g.*, *Campbell "66" Express, Inc. v. Industrial Comm'n*, 83 Ill. 2d 353, 357 (1980) (truck-driver claimant's travel requirements subjected him to risks of injury from tornadoes beyond that to which the general public was exposed); *Beecher Wholesale Greenhouse, Inc. v. Industrial Comm'n*, 170 Ill. App. 3d 184, 190-91 (1988) (claimant-salesman who was injured by lightning traveling through telephone line sustained an injury arising out of his employment where telephone line was located at a high point on the building, the telephone line was not well grounded, and the high humidity and dirt content in the greenhouse increased conductivity along the surface of the telephone lines); *Inland Steel Co. v. Industrial Comm'n*, 41 Ill. 2d 70, 72-73 (1968) (claimant who was injured by falling building debris during a storm sustained an injury arising out his employment where the construction of the building and its roofing materials increased the danger that the roof would collapse during a storm).

¶ 63      *Caterpillar Tractor* prescribes the proper test for analyzing whether an injury "arises out of" a claimant's employment, when a claimant is injured performing job duties involving common bodily movements or routine everyday activities. *Sisbro* and *Caterpillar Tractor* make it clear that common bodily movements and everyday activities are compensable and employment related if the common bodily movement resulting in an injury had its origin in some risks connected with, or incidental to, employment so as to create a causal connection between the employment and the accidental injury. *Sisbro*, 207 Ill. 2d at 203 (citing *Caterpillar Tractor*, 129 Ill. 2d at 58). *Caterpillar Tractor* does not require a claimant to provide additional evidence establishing that he was exposed to the risk of injury, either qualitatively or quantitatively, to a greater degree than the general public, once he has presented proof that he was involved in an employment-related accident. *Caterpillar Tractor*, 129 Ill. 2d at 58.

¶ 64      We note that *Adcock* and its progeny require claimants to follow *Caterpillar Tractor* and prove an employment-related risk but, if a common bodily movement caused the injury, additional evidence is required: evidence that claimant's work

required him to engage in everyday activity to a greater extent than general public. See *Adcock*, 2015 IL App (2d) 130884WC ¶¶ 42-43. Once it is established that the injury is work related, *Caterpillar Tractor* does not require claimants to present additional evidence for work-related injuries that are caused by common bodily movements or everyday activities. Therefore, we hold that *Adcock* and its progeny are overruled to the extent that they find that injuries attributable to common bodily movements or routine everyday activities, such as bending, twisting, reaching, or standing up from a kneeling position, are not compensable unless a claimant can prove that he or she was exposed to a risk of injury from these common bodily movements or routine everyday activities to a greater extent than the general public.

¶ 65                                E. The Alternative Arguments

¶ 66        In light of our finding that the evidence shows that claimant's knee injury arose out of and in the course of his employment with the restaurant and was therefore employment related, we need not address claimant's alternative argument that his knee injury is compensable under a neutral-risk analysis. Similarly, and for the same reasons, we need not address the employer's argument relating to the positional risk doctrine, which this court has declined to adopt (*Brady*, 143 Ill. 2d at 552-53) and which only applies to neutral risks. See *USF Holland, Inc. v. Industrial Comm'n*, 357 Ill. App. 3d 798, 803 (2005).

¶ 67                                     III. CONCLUSION

¶ 68        We hold that claimant's knee injury was employment related because it was caused by kneeling and standing while assisting a coworker's search for carrots in a walk-in cooler—acts that were incident to and causally connected to claimant's job duties as an arranger of the walk-in cooler. We also hold that the Commission's finding—that claimant's act of kneeling and standing searching for a misplaced pan of carrots was unrelated to his employment—is against the manifest weight of the evidence in the record. Finally, we hold that *Caterpillar Tractor* prescribes the proper test for analyzing whether an injury "arises out of" a claimant's employment, when a claimant is injured performing job duties involving common bodily movements or routine everyday activities.

¶ 69 Accordingly, we reverse the appellate court's judgment, which affirmed the judgment of the circuit court of Cook County. We reverse the circuit court's judgment, which affirmed the Commission's decision. We reverse the Commission's decision and remand the cause with directions to enter an order consistent with the arbitration decision.

¶ 70 Judgments reversed.

¶ 71 Commission decision reversed.

¶ 72 Cause remanded with directions.

¶ 73 JUSTICE MICHAEL J. BURKE took no part in the consideration or decision of this case.