# Illinois Official Reports

## Appellate Court

> ### *Purcell v. Illinois Workers' Compensation Comm'n*,
> ### 2021 IL App (4th) 200359WC

| | |
|---|---|
| Appellate Court Caption | EMILY PURCELL, Appellant, v. THE ILLINOIS WORKERS' COMPENSATION COMMISSION *et al.* (University of Illinois, Appellee). |
| District & No. | Fourth District, Workers' Compensation Commission Division No. 4-20-0359WC |
| Filed | April 27, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Champaign County, No. 19-MR-867; the Hon. Thomas J. Difanis, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Sandra K. Loeb, of Spiros Law, P.C., of Danville, for appellant. Joseph K. Guyette, of Heyl, Royster, Voelker & Allen PC, of Champaign, for appellee. |
| Panel | PRESIDING JUSTICE HOLDRIDGE delivered the judgment of the court, with opinion. Justices Hoffman, Hudson, Cavanagh, and Barberis concurred in the judgment and opinion. |

**OPINION**

¶ 1       The claimant, Emily Purcell, appeals a decision of the Illinois Workers' Compensation Commission (Commission) denying her claim for benefits under the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 2016)). The Commission affirmed the arbitrator's decision with changes, finding that the claimant failed to prove that her accident arose out of her employment. The claimant sought review of the Commission's decision before the circuit court of Champaign County. The court confirmed the Commission's decision.

¶ 2                                    I. FACTS

¶ 3       The following factual recitation is taken from the evidence presented at the arbitration hearing conducted on July 11, 2018.

¶ 4       The claimant provided the following testimony. She was employed as an administrative assistant on a temporary or "extra help" basis by the University of Illinois (University). Her regular work hours were 8:30 a.m. to 5 p.m., Monday through Friday, and she was paid for 7.5 hours per day. The claimant's primary job duty was to facilitate the day-to-day operations of the Mortensen Center, which focused on international libraries. Her job required her to leave her office located in the undergraduate library on a daily basis to perform various duties around campus. The claimant worked with departments on and off campus for purposes of event planning and coordination. When she had to go to other campus buildings, she would generally walk, but would also take the bus. The claimant occasionally gave tours of the campus, which involved walking around with international visitors. She managed her own daily schedule and decided when to complete various tasks and what route to take. However, the claimant later clarified that, on the occasions she would go out on campus in conjunction with her employment, it was done at the direction of her supervisor, Clara Chu, or another supervisor.

¶ 5       As a temporary employee, the claimant was required to turn in her time card at the Personnel Services Building every other Friday. She described this as a job duty. The claimant described that she would typically walk from her office to the Personnel Services Building or take the bus through campus and that she was not directed by the University as to the route she had to take to complete this task. She was not required to drop off the time card at any particular time of day and she "always" did so during her work hours. However, sometimes she turned in her time card before she went to her office in the morning but never during her lunch hour.

¶ 6       On September 9, 2016, the claimant took the bus to campus for work and arrived at approximately 8:20 a.m. After she exited the bus, she intended to walk to the Personnel Services Building to drop off her time card. The claimant noted that the Personnel Services Building was in the opposite direction from her office located in the library. She crossed a street as she walked in the direction of the Personnel Services Building and approached a chain barrier/fence. She attempted to "hop" over it, the heel of her shoe got caught, and she fell onto her right elbow. The claimant was taken by ambulance to Presence Covenant Medical Center, and she ultimately had surgery on her right elbow on September 19, 2016.

¶ 7       The claimant admitted that there was no defect with the fence or the ground around it where she fell and that she fell before her workday began. Although the route she took was the most direct route, approximately 10 to 15 feet to the left of where she fell was an area without a fence. She admitted that there were no obstructions or anything else that would have prevented

her from taking a route that would have allowed her to avoid the chain fence. She also admitted that it would have been safer to use a route that did not require her to cross the chain, and it would have only taken a couple of extra seconds for that route. The claimant stated that there were no other errands that she completed for the University before arriving to her office.

¶ 8 The claimant initially testified that she was told by her supervisor, Chu, that she was allowed to turn in her time card during work hours. Additionally, she stated that a human resources representative for the University, Skye Arseneau, also told her that she could turn in her time cards during work hours. The claimant stated that she understood that turning in her time card was a function of her job, she was required to physically turn it in, and she was able to turn it in during her workday. However, she later stated that she did not know if anyone actually told her that she was able to turn her time card in during work hours.

¶ 9 Chu testified that the claimant's job duties required her to leave the office "at times" and that she would walk between the buildings on campus when completing those duties. Chu stated that temporary employees, like the claimant, were required to turn in time cards at the Personnel Services Building to get paid. She noted that the claimant typically turned in her time card every other Friday, but that it could be done at any time prior. Chu stated that she did not instruct the claimant to turn in the time card at a certain time of day or outside of work hours. She assumed the claimant would turn it in during her breaks, like lunch, or after.

¶ 10 Arseneau testified that time reporting must be done very accurately and that temporary employees could be marked off for as little as one minute. Arseneau stated that these employees were supposed to complete their time cards during non-work hours and that they were not paid for the time it took to physically drop off their time cards. She noted that the time cards were to be turned in before work, at lunch, or after work. Arseneau explained that there is an exterior drop box at the Personnel Services Building so that employees could turn in time cards even when the department was closed. She stated that temporary employees are told during their information session on their first day of employment that time cards are not to be turned in during work hours. Arseneau had no personal knowledge that the claimant was so informed.

¶ 11 The claimant testified on rebuttal that she never attended any training prior to being employed as extra help and that she was never asked to attend a training session described by Arseneau. She also stated that she was not advised by anyone that her time cards were to be turned in during non-work hours. However, the claimant admitted that her time card for her first day of work reflected three hours of work that she spent with Arseneau filling out paperwork.

¶ 12 The arbitrator analyzed the claimant's case under a traveling-employee framework and concluded that the claimant failed to establish that she was a traveling employee. Specifically, the arbitrator noted that the testimony demonstrated that the claimant's tasks outside of the building that housed her office were uncommon; when the claimant worked outside of the library, those tasks were at Chu's specific direction; and Chu did not direct the claimant to undertake any task outside of the library on the morning of her injury. Further, the arbitrator noted that, the claimant's understanding that she could turn in her time card during work hours was her misunderstanding and did not make the activity work-related. The arbitrator also found that, even if the claimant was a traveling employee, her decision to hop over the fence was a personal risk unrelated to her employment. Therefore, the arbitrator concluded that the claimant's injury neither arose out of nor occurred in the course of her employment.

¶ 13    The claimant sought review of the arbitrator's determination before the Commission, which affirmed the arbitrator's decision with changes. The Commission disagreed with the arbitrator's finding that the claimant was not acting in the course of her employment at the time of the accident because the claimant was injured on the University's premises within a reasonable time period before commencing her job duties. However, the Commission agreed that the claimant failed to prove that the accident arose out of her employment.

¶ 14    The claimant sought review of the Commission's decision before the circuit court of Champaign County. Following a hearing, the court confirmed the Commission's decision.

¶ 15                                II. ANALYSIS

¶ 16    On appeal, the claimant argues that the Commission's finding that her injury did not arise out of her employment was against the manifest weight of the evidence. She argues that she proved this element as either a non-traveling employee or a traveling employee.

¶ 17    We first turn to whether the claimant satisfied the "arising out of" requirement as a non-traveling employee. If we answer that question in the negative, then we will decide whether she qualified as a traveling employee and satisfied the element in that capacity. "The determination of whether an injury arose out of and in the course of one's employment is generally a question of fact." *Hosteny v. Illinois Workers' Compensation Comm'n*, 397 Ill. App. 3d 665, 674 (2009). A factual finding by the Commission will not be set aside on appeal unless it is against the manifest weight of the evidence. *City of Springfield v. Illinois Workers' Compensation Comm'n*, 388 Ill. App. 3d 297, 315 (2009). A finding of fact is against the manifest weight of the evidence when an opposite conclusion is clearly apparent. *Gross v. Illinois Workers' Compensation Comm'n*, 2011 IL App (4th) 100615WC, ¶ 21. The appropriate test for our review is whether the evidence of record is sufficient to support the Commission's determination—not whether this court or another tribunal might have reached an opposite conclusion. *Pietrzak v. Industrial Comm'n of Illinois*, 329 Ill. App. 3d 828, 833 (2002).

¶ 18                        A. Non-Traveling Employee

¶ 19    To obtain compensation under the Act, a claimant must show, by a preponderance of the evidence, that she suffered a disabling injury that "arose out of" and "in the course of" her employment. *Baggett v. Industrial Comm'n*, 201 Ill. 2d 187, 194 (2002). "The 'arising out of' requirement is primarily concerned with causal connection." *McAllister v. Illinois Workers' Compensation Comm'n*, 2020 IL 124848, ¶ 36. Thus, to satisfy this requirement, the claimant must show that the injury had its origin in some risk connected with, or incidental to, her employment so as to create a causal connection between her injury and employment. *Id.* "A risk is incidental to the employment when it belongs to or is connected with what the employee has to do in fulfilling his or her job duties." *Id.* There are three categories of risk recognized by our supreme court: employment risks, risks personal to the employee, and neutral risks. *Id.* ¶ 38.

¶ 20    In the case before us, the claimant asks that we find that her injury arose out of an employment-related risk, which is a risk distinctly associated with employment. See *id.* ¶ 40. Generally, a risk arises out of one's employment if, at the time of the occurrence, the employee was performing an act (1) she was instructed to perform by her employer, (2) she had a common law or statutory duty to perform, or (3) which the employee might reasonably be

expected to perform incident to her assigned duties. *Caterpillar Tractor Co. v. Industrial Comm'n*, 129 Ill. 2d 52, 58 (1989). "Examples of employment-related risks include tripping on a defect at the employer's premises, falling on uneven or slippery ground at the work site, or performing some work-related task which contributes to the risk of falling." (Internal quotation marks omitted.) *McAllister*, 2020 IL 124848, ¶ 40.

¶ 21 Here, the claimant argues that the act that caused her injury (hopping over a chain barrier along a sidewalk on her way to drop off her time card) was an act the University might reasonably expect her to perform to fulfill her duties as a temporary employee who was required to drop off her time card. The claimant attempts to distinguish her case from *Dodson v. Industrial Comm'n*, 308 Ill. App. 3d 572 (1999), which the Commission relied on in finding that her injury did not arise out of her employment as a non-traveling employee.

¶ 22 In *Dodson*, the claimant was exiting her employer's premises through the employee exit. *Id.* at 574. She proceeded down several steps of concrete sidewalk leading to the employee parking area, and because it was raining hard, she left the sidewalk and walked across a grassy slope to reach the driver's side of her car. *Id.* The stairs and sidewalk were in good condition and not blocked by an obstruction. *Id.* The claimant testified that she walked across the grass because it was the most direct route to her car. *Id.* While walking on the grassy slope, she fell and was injured. *Id.* On appeal, this court found that the claimant's voluntary decision to traverse the grassy slope, instead of the walkway, exposed her to an unnecessary danger entirely separate from her employment responsibilities. *Id.* at 576. Further, it was the claimant's decision not to use the walkway, which was for her own benefit, and not that of her employer. *Id.* at 577. Thus, the claimant's injuries did not arise out of her employment. See *id.*

¶ 23 We agree with the Commission that the reasoning in *Dodson* applies here. The claimant voluntarily hopped over the chain fence when the heel of her shoe got caught and she was injured. This decision exposed her to an unnecessary danger entirely separate from her employment responsibilities. The claimant did not assert that her decision to hop over the chain fence was to avoid any defect or obstruction. Additionally, her decision not to use the walkway, which she testified would have been safer and only taken an extra few seconds, was for her own benefit and not to the benefit of the University. An injury does not arise out of employment where an employee voluntarily exposes herself to an unnecessary personal danger solely for her own convenience. *Orsini v. Industrial Comm'n*, 117 Ill. 2d 38, 47 (1987); see *Hatfill v. Industrial Comm'n*, 202 Ill. App. 3d 547, 553 (1990) (the claimant's injury did not arise out of his employment when he took a shortcut by jumping across accumulated water instead of using the designated walkways). Therefore, we find that the claimant's injury did not arise out of her employment as a non-traveling employee.

¶ 24                                B. Traveling Employee

¶ 25 Next, we consider whether the claimant's injury arose out of her employment as a traveling employee. A traveling employee is one for whom travel is an essential element of her employment where she must travel away from her employer's premises to perform her job. *Cox v. Illinois Workers' Compensation Comm'n*, 406 Ill. App. 3d 541, 545 (2010). Accordingly, traveling employees are exposed to hazards of the street and to the hazards of automobiles much more than the general public. *Mlynarczyk v. Illinois Workers' Compensation Comm'n*, 2013 IL App (3d) 120411WC, ¶ 19. Therefore, "[t]he test for determining whether an injury to a traveling employee arose out of and in the course of [her]

employment is the reasonableness of the conduct in which [she] was engaged and whether the conduct might normally be anticipated or foreseen by the employer." *Cox*, 406 Ill. App. 3d at 545-46.

¶ 26    Here, the Commission found that the claimant failed to establish that she was a traveling employee because (1) Chu testified that the claimant's tasks outside of the library where her office was housed were uncommon; (2) when the claimant worked outside of the library, it was at the specific direction of her supervisor; (3) Chu did not direct the claimant to undertake any tasks outside of the library on the morning she was injured; and (4) Chu and Arseneau testified that temporary employees turned in time cards outside of their work hours. We note that these statements the Commission relied on conflict with the claimant's testimony that (1) her job required her to leave her office on a daily basis to perform various duties around campus and (2) it was understood that she could turn in her time card during work hours. However, the claimant's testimony was inconsistent as to whether she was actually told by Chu or Arseneau that she could turn in her time card during work hours. *Supra* ¶ 9. Thus, there was a clear factual dispute as to whether travel was an essential element of the claimant's employment and whether turning in her time card fell within the scope of that travel and her job duties.

¶ 27    It is the function of the Commission to assess the credibility of the witnesses, resolve conflicts in the evidence, assign weight to be accorded to the evidence, and draw reasonable inferences therefrom. *Bolingbrook Police Department v. Illinois Workers' Compensation Comm'n*, 2015 IL App (3d) 130869WC, ¶ 52. For the reasons articulated by the Commission, we cannot say that its determination that the claimant was not a traveling employee was against the manifest weight of the evidence.[1] See *Kertis v. Illinois Workers' Compensation Comm'n*, 2013 IL App (2d) 120252WC, ¶ 21 (the claimant was a traveling employee where his *unrebutted testimony* provided that he was required to travel on a regular basis and that there was rarely a day that he was not required to do so). There is evidence of record to support the Commission's resolution of the evidence against the claimant. Thus, we need not decide whether the claimant's act of traveling to other campus buildings constitutes traveling away from her employer's premises (*Cox*, 406 Ill. App. 3d at 545) because we find the record supports the Commission's conclusion that travel was not an essential element of the claimant's employment.

¶ 28    Last, the claimant raises issues pertaining to the so-called "street risk doctrine," which provides that where the evidence establishes that the claimant's job required that she be on the street to perform the duties of her employment, the risks of the street become one of the risks of employment. *Nee v. Illinois Workers' Compensation Comm'n*, 2015 IL App (1st) 132609WC, ¶ 26. In essence, this is the same as the traveling employee doctrine. *Metropolitan Water Reclamation District of Greater Chicago v. Illinois Workers' Compensation Comm'n*, 407 Ill. App. 3d 1010, 1016 (2011) (Holdridge, J., specially concurring). Since we have already

---

[1]We note that the claimant takes issue with the Commission's mere citation to *Allenbaugh v. Illinois Workers' Compensation Comm'n*, 2016 IL App (3d) 150284WC, in deciding that she was not a traveling employee. She distinguishes her case, arguing that the claimant in *Allenbaugh* did not qualify as a traveling employee at the time of his injury because he was injured during his regular commute from his home to his employer's premises. *Id.* ¶ 18. Without the Commission providing an explanation or even a pinpoint citation, we do not know why it relied on such case, and we decline to speculate. Moreover, we find that *Allenbaugh* is not pertinent in reaching our decision.

decided that the claimant was not a traveling employee, we need not address this argument.

¶ 29                                   III. CONCLUSION

¶ 30        For the foregoing reasons, we affirm the judgment of the circuit court of Champaign County, which confirmed the Commission's decision.

¶ 31        Affirmed.