**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 220339-U

Order filed January 30, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| *In re* ADOPTION OF S.S. and A.S., | ) | Appeal from the Circuit Court |
| | ) | of the 21st Judicial Circuit, |
| Minors | ) | Kankakee County, Illinois. |
| | ) | |
| (Paulla G. and Eduardo O., | ) | |
| | ) | |
| Petitioners-Appellants, | ) | Appeal No. 3-22-0339 |
| | ) | Circuit No. 2019 AD 13 |
| v. | ) | |
| | ) | |
| Allen J.S., Jr., | ) | The Honorable |
| | ) | Scott N. Sliwinski, |
| Respondent-Appellee). | ) | Judge, Presiding. |
| | ) | |

_____

PRESIDING JUSTICE HOLDRIDGE delivered the judgment of the court.
Justices McDade and Hettel concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:    The trial court's denial of the petitioners' petition to terminate the father's parental rights and to adopt his children was against the manifest weight of the evidence.

¶ 2    Petitioners-Appellants, Paulla Grzych (Grzych) and Eduardo Ochoa (Ochoa) filed a

petition to adopt Sophia S. and Ava S., the minor daughters of Respondent-Appellee Allen Smith,

Jr. (Smith) and Grzych's late sister Elizabeth Grzych (Elizabeth). The petition alleges that it is in the best interests of the children for Grzych and Ochoa (Grzych's long-time fiancé) to adopt the children and for Smith's parental rights to be terminated. After finding Smith to be an unfit parent, the trial court held a separate proceeding to determine the best interests of the children. The trial court found that the termination of Smith's parental rights would not be in the children's best interests, and denied the petition. This appeal followed.

¶ 3                                    I. FACTS

¶ 4        Elizabeth and Smith were married in December 2004 and divorced on May 11, 2015. They had two biological children together, Sophia S. (Sophia) and Ava S. (Ava). Sophia was born on January 27, 2011, and Ava was born on November 16, 2012. At the time of the best interest hearing, Ava was eleven and Sophia was nine.

¶ 5        Smith has an extensive criminal history and has been incarcerated for a substantial portion of his life. He has been convicted of several felony offenses, including aggravated arson, unlawful use of a weapon, theft, and various drug offenses. He has also been convicted of domestic battery twice, once for slapping Elizabeth two times and once for striking his girlfriend.

¶ 6        Elizabeth was diagnosed with stage 4 cervical cancer in May of 2015. Smith was incarcerated at the time. On May 26, 2015, Grzych, the children's maternal aunt, was appointed the children's legal guardian pursuant to a plenary guardianship. She has remained the children's guardian since that time. Smith was incarcerated when Elizabeth died on January 29, 2016, and when Grzych was appointed guardian. Smith consented to the guardianship while he was incarcerated. However, after he was released from prison, Smith filed a petition to either

terminate the guardianship or, in the alternative, grant him visitation.

¶ 7 On May 15, 2019, Grzych and Ochoa filed their Complaint for Adoption. The complaint alleged that Smith was unfit on the basis of depravity and that allowing Grzych and Ochoa to adopt the children was in the children's best interests.

¶ 8 A. The Fitness Hearing

¶ 9 The trial court conducted a fitness hearing on August 6, 2020, and September 24, 2020. At the commencement of the hearing, the petitioners called Smith as an adverse witness. Although Smith disputed certain aspects of the criminal charges brought against him, he acknowledged his criminal history and his repeated incarcerations. Smith admitted that, after he was released from prison following his second domestic battery conviction, he violated the terms of his parole and returned to prison, where he remained until November 26, 2017. He also admitted that, on several occasions when he saw Ochoa at the Kankakee County Courthouse, he called Ochoa a "dirty spic" and told Ochoa that he wanted to get into a physical altercation with him.

¶ 10 Anna Grzych (Anna), the children's maternal grandmother, testified on behalf of the petitioners. Anna testified that she had seen Smith physically abuse Elizabeth on one occasion in 2010. That occurred while Smith, Elizabeth and Anna were driving home from Indiana together. Anna stated that Smith had repeatedly called Elizabeth names and eventually started striking her.

¶ 11 Anna further testified that, in 2011, she lived in an apartment below Smith and Elizabeth that shared a hallway/staircase. She stated that she would frequently hear Smith screaming at Elizabeth while Elizabeth was pregnant with Sophia and after Sophia was born. Anna recalled a specific instance when she heard Smith yelling angrily and Elizabeth calling for help. When Anna

- 3 -

went to investigate, Smith blocked her entry into the apartment and would not allow Elizabeth to leave the bathroom. Sophia was present in the next room at the time. Anna further testified that, in 2012 and 2013, there were verbal altercations between Smith and Elizabeth on a weekly basis while Sophia was present.

¶ 12    Detective Lacy Zingre of the Kankakee City Police Department also testified on behalf of the petitioners. Zingre stated that, in September of 2019, she encountered Smith in an alley at approximately 3:00 a.m. Smith was on parole at the time. Zingre testified that Smith was acting odd and did not appear to know where he was. Based on her experience, Zingre believed that Smith appeared to be under the influence of something more than alcohol.

¶ 13    Zingre further testified that, in the Spring of 2020, Smith called the Kankakee Police Department multiple times a day for weeks regarding a video that he had seen on Facebook. The video depicted a young girl being beaten. Smith was convinced that the girl in the video was his daughter. When Zingre explained that the video depicted events that had occurred in another country, Smith became irate and refused to accept it.

¶ 14    Zingre further testified that, when she arrived at the courthouse on the day of the fitness hearing, Smith threatened to punch her for coming to testify.

¶ 15    Grzych testified that she became the children's legal guardian in 2015 when Elizabeth's oncologist told Elizabeth to make her final arrangements. She stated that, after Smith was released from prison in September of 2016, she arranged for Smith to visit the children a few times. These visits occurred during the winter of 2016 and spring of 2017. The first such visit occurred on the day Smith was released from prison.

¶ 16      The last visit occurred on May 23, 2017. On that date, Grzych took the children to see Smith at his mother's house, where he lived. While the children were with Smith that evening, Grzych received a telephone call from Smith's sister, who expressed concern and told Grzych that she should to pick up the children. As a result of that call, Grzych decided that she needed to pick the children up right away. When she called Smith's mother to discuss the matter, she could hear Smith in the background angrily yelling "[f]uck her, fuck that spic" and repeatedly saying "pedophile." Smith indicated that Grzych could not pick up the children. Grzych then called the Kankakee police and arranged for them to be present while she picked up the children. When Grzych arrived at the house, Smith walked out to the yard to meet her. He got very close to her face, called her a "stupid bitch," and threatened to "knock [her] teeth down [her] throat." The police then intervened and allowed Grzych to enter the residence to retrieve the children from an upstairs bedroom. Grzych testified that, when she entered the bedroom, Smith grabbed her and threw her across the room. With assistance from the police, Grzych was able to retrieve the children safely.

¶ 17      Grzych testified that, the following day, Smith left multiple voicemails on her phone threatening her and Ochoa. As a result, Grzych and Ochoa obtained an emergency order of protection against Smith. Their subsequent petition for a plenary order of protection was granted. The order of protection was later extended for two years. The order barred Smith from visiting or contacting Grzych, Ochoa, or the children.

¶ 18      On cross-examination, Grzych acknowledged that, prior to the incident that led to the order of protection, Smith was angry that Ochoa was spanking the children. Although she

described the "spanking" incident as merely a "tap on the hand," she conceded that Smith had a right to be angry about that. She agreed that she had brought criminal charges against Smith for the battery he had committed on her, and she acknowledged that Smith had been acquitted of those charges after a jury trial. She stated that she had not observed any "physical safety issues" between Smith and the children other than the incident that resulted in the order of protection. In response to questioning by Smith's counsel, Grzych testified that Sophia and Ava each receive a survivor's benefit of $714 per month. She stated that she spends all of that money on the children.

¶ 19   During his case in chief, Smith testified that he loved and cherished his children, he missed them, and it was important to him that he see them. He stated that he had never been accused of abusing a child and that his daughters would be safe with him.

¶ 20   Smith repeatedly expressed anger and concern over the fact that Ochoa had spanked the children. Smith testified that Ochoa left knives around the house and he had spanked one of the children on the hand for picking up one of the knives. Smith became angry about that because he believed that Ochoa should never touch his children. Smith did not know whether Ochoa did anything other than spank the children.

¶ 21   Smith further testified that he did not contest the divorce sought by Elizabeth because he wanted his children to get social security benefits. He stated that Grzych had allowed her own biological daughter to live with Smith and Elizabeth intermittently from the time she was 6 months old until she was 14 years old. Grzych never made any complaints about Smith's behavior toward her daughter while she was living with Smith and Elizabeth. Smith believed that Grzych was now alleging that Smith was morally depraved because of Ochoa, who Smith

characterized as "scary."  Smith claimed that he had never spoken with Ochoa because Ochoa did not want to speak with him.

¶ 22     Smith testified that he is 43 years old and has spent 17 or 18 years in prison.  He noted that he had been undergoing therapy due to his depression, which he attributed to his separation from his daughters.   However, Smith offered no evidence of rehabilitation or efforts to curb his anger issues.

¶ 23     The trial court found Smith to be unfit under section 1(D)(i) of the Adoption Act. 750 ILCS 5/1(D)(i) (West 2020).  That section provides that a parent may be found to be depraved (and therefore unfit) if he has been convicted of at least three felonies, at least one of which took place within five years of the filing of the petition or motion seeking termination of parental rights. The trial court noted that it was unrebutted that Smith had the requisite number of felony convictions within the statutory timeframe.  The court found that Smith had presented no evidence that would rebut the statutory presumption of unfitness on grounds of depravity.  Specifically, the trial court noted that Smith had provided no evidence that he sought anger management treatment or was in any way trying to modify his behavior. The trial court further noted that Smith's conduct during the fitness proceedings, including his many outbursts and his threatening of witnesses while they were in the courtroom or on the witness stand, further supported a finding of unfitness. The trial court stated that Smith "cannot or is unwilling to conform to moral and social requirements."

¶ 24     Smith filed a motion to reconsider the trial court's order more than 30 days after the order was issued. Upon motion of the petitioners, the trial court struck Smith's motion as untimely.

Approximately 17 months later, Smith filed another motion that, in part, asked the trial court to reconsider its finding of unfitness. Once again, the petitioners moved to strike Smith's motion as untimely. The trial court did not rule on Smith's motion until the conclusion of the best interests hearing.

¶ 25                                    B. The Best Interests Hearing

¶ 26        The trial court held a separate proceeding to determine the children's best interests. The hearing was conducted on February 11, 2021, and May 10, 2022.

¶ 27        During the hearing, Grzych testified that she and Ochoa have lived together for seven and a half years and have been engaged for seven years. When asked why they have not gotten married, Grzych stated that she did not "put a big, heavy importance on a piece of paper." She stated that she and Ochoa consider themselves to be husband and wife and have been living as such. She testified that they have delayed their wedding because Ochoa wanted to get married in a church and have a big wedding but they cannot afford to pay for a big wedding at this time. Grzych stated that "[w]hen we have enough money to do that big wedding *** we'll do it."

¶ 28        Grzych and Ochoa each testified as to their lives and relationships with the children. Grzych testified that Sophia and Ava live together with Grzych, Ochoa, their daughter, Erica, and Grzych's oldest daughter, Teanna. The family lives in a four-bedroom home in Lansing, Illinois. Both Grzych and Ochoa described their daily routine, which consisted of getting the girls ready for school in the morning, making dinner together, and assisting with homework. Grzych further testified that she and Ochoa had taken extra steps to set up a special program at Sophia's school when she was struggling. They described the extracurricular activities and neighborhood events

- 8 -

the children had participated in since 2015, and detailed how they have specifically gotten involved with the girls' softball, Girl Scouts and art classes. They also described the friends the girls had made at school and around the neighborhood.

¶ 29    Grzych testified that Ava suffered from spina bifida occulta. She described how she and Ochoa had addressed it with doctors at University of Chicago. Grzych and Ochoa also set the girls up with grief counseling for a few years after their mother passed away. They each described the strong bonds that Sophia and Ava have not only within the nuclear family, but with Grzych's and Ochoa's extended families as well.

¶ 30    Grzych and Ochoa each testified that they have considered the children to be their daughters and have treated them as such since the guardianship was granted in 2015. The children came to them whenever they needed comfort or help. Ochoa described times when Ava had come to him in the middle of the night because she had a nightmare.  He further testified that Sophia had sought his advice about making friends at school. Grzych and Ochoa described a very safe, stable home life for the children that was filled with love and support.

¶ 31    During cross-examination, Grzych testified that, although Elizabeth babysat Teanna when Grzych was working two jobs, Teanna never lived with Smith and Elizabeth.  Grzych and Teanna moved in with Elizabeth for a period of time before Elizabeth was married to Smith. Grzych testified that Smith has not helped her to raise her daughter Teanna in any way.

¶ 32    Grzych admitted that, on the occasions that she saw the children visit Smith, they were happy to see him.  She stated that she had never seen Smith physically abuse the children. However, she stated that she saw Smith yelling in front of the children and that the children were

in the room when Smith threw Grzych across the room during the incident that led Grzych to seek an order of protection.

¶ 33    Grzych admitted to spanking the children to discipline them, but she stated that Ochoa had merely tapped Ava on the hand on one occasion. She testified that neither she nor Ochoa have ever abused the children.

¶ 34    On redirect examination, Grzych testified that she rarely spanks the children because they are well behaved. When she does spank them, she does not hit them hard, and the spankings have never left a mark.

¶ 35    On recross-examination, Ochoa testified that the children had a "great time" with Smith when Ochoa dropped them off at Smith's house. He believed that the children should know where their father is and should have a relationship with him. On the few occasions that Ochoa observed Smith and his daughters together, he never saw Smith yell or behave in an unsafe manner around the girls.

¶ 36    On redirect examination, Ochoa testified that, although he had dropped the children off for visits with Smith on a few occasions, he saw Smith interact with the children only once. He did not see Smith do anything to jeopardize the children's welfare on that occasion. Nevertheless, Ochoa had concerns about the children's welfare when they are with Smith due to Smith's volatile and aggressive behavior in the courthouse and the courtroom, including his repeated outbursts during the trial testimony. Ochoa further testified that Smith had threatened him three times at the courthouse. Ochoa believed that this type of behavior would scare the children.

¶ 37    Teanna Grzych, Grzych's daughter, also testified. Teanna was 20 years old at the time of

the hearing. Teanna testified that she resided with Grzych, Ochoa, her cousins (Sophia and Ava), and her half-sister, Erica. Teanna stated that she considered Sophia and Ava to be her little sisters.

Teanna recounted in detail how well her mother cared for the children on a daily basis, including their daily routine and activities. Teanna also described the relationship that she, Sophia, and Ava have with Ochoa. She stated that Ochoa has been a father figure for her and the girls. Teanna gave Ochoa "an A+ grade" as a father. She further described the good relationship the girls had with Ochoa's extended family.

¶ 38 Teanna testified as to several instances when she witnessed Smith yell at Elizabeth. On one occasion, when Teanna was approximately 10-11 years old, she saw Smith yell so aggressively at Elizabeth that the police had to be called. She described a similar incident that occurred approximately two years earlier when the police had to be called. She testified as to two other instances when Smith yelled at Elizabeth. Teanna felt threatened on at least one of those occasions.

¶ 39 Theresa Goudie, the court-appointed guardian *ad litem*, also testified. Goudie was initially appointed the guardian *ad litem* in 2018, during the guardianship proceedings. In order to determine what was in the children's best interests, Goudie interviewed Grzych, Smith, and Ochoa. She met the children at their home and saw them at her office twice. She spoke with the girls' teachers and the school social worker. She also visited Smith's home. Goudie prepared two reports after the adoption petition was filed, and testified consistently with her reports.

¶ 40 Goudie testified that, every time she met with the children, they appeared to be fed, healthy, and clean. Goudie never had any concerns about their current living conditions or the

interactions between Grzych, Ochoa and the children. The children had a good relationship with both Grzych and Ochoa. They considered Grzych, Ochoa, Teanna, and Erica to be their family. The home life the children enjoyed with Grzych and Ochoa was safe, secure and stable. Goudie opined that there was love in the home and that the girls were valued and appeared to be well-adjusted. Goudie further stated that the children told her that they wanted to continue living with Grzych in the family home on a long-term basis.

¶ 41        Goudie testified that the children also appeared to have a good relationship with Grzych's extended family. Their maternal grandmother was at the house the first time Goudie went there. The children saw her every Friday. In addition, the girls spoke and acted as if Teanna and Erica were their sisters. Goudie also noted that the girls have cousins that they enjoy playing with on Ochoa's side of the family.

¶ 42        Goudie stated that the girls did not have a comparable relationship with anyone in Smith's extended family. When she visited Smith at his mother's home (where he resides), his mother did not make herself available. No one from Smith's family reached out to Goudie.

¶ 43        Goudie spoke with the children's teachers and reviewed their school records. The teachers spoke very highly of the children and indicated that they were well adjusted educationally and socially. Further, the girls had been involved in numerous extracurricular activities that suited their interests. They had friends both at school and in the neighborhood, which Grzych and Ochoa encouraged and helped facilitate.

¶ 44        Goudie also commented on the behavior exhibited by each party during the investigation and subsequent hearings. Grzych and Ochoa had been calm and had acted normally. However,

Goudie saw Smith threaten Ochoa and act angrily on several occasions during the court proceedings.

¶ 45 Goudie testified that the children had never alleged that Smith had abused them, either mentally or physically. She noted that Smith had expressed a very strong desire to remain in his children's lives. She commented that Smith was extremely persistent and had attended every scheduled meeting and court hearing. Moreover, when Goudie visited Smith's mother's home, "it appeared to be an appropriate home to live in." It was clean, well cared for, and stocked with food.

¶ 46 Goudie testified that the children expressed a desire to see their father. They mentioned that they had some good memories of their father and recall having fun with him when they were very young. However, the children also recalled Smith's yelling and anger, and they told Goudie that they want to remain with Grzych and Ochoa long term.

¶ 47 Goudie noted that the issue of Smith's visitation rights was addressed before a different judge during the guardianship proceedings. According to Goudie, the issue of supervised visitation was addressed at the guardianship hearing, but the court's final order indicates that neither party seemed to be interested in that option. The trial court denied visitation.

¶ 48 Goudie did not render an opinion as to whether the granting of the petition for adoption was in the best interests of the children because she believed that was a matter for the court to decide. She also found it difficult to render a definitive opinion on the matter because she had not had an opportunity to observe Smith's parenting or his interaction with the girls due to the order of protection. Nevertheless, upon further questioning by counsel and by the trial court,

Goudie stated that nearly every best interest factor referenced in 705 ILCS 405/1-3(4.05) weighed in favor of the adoption being granted. She testified that the children were safe, secure, and well cared for by Grzych and Ochoa. She stated that the children were coming into their own in their current home and that they identified as members of Grzych and Ochoa's nuclear family. The children had a stronger relationship with Grzych's and Ochoa's families than they had with Smith's family. Goudie opined that the children had a strong attachment to Grzych and Ochoa because they are loved and feel secure. She concluded that the children were very well integrated into their home, school and community. Moreover, Goudie stated that the children's need for permanence and stability of relationships was best maintained with Grzych and Ochoa, and that allowing the children to remain with them would be the least disruptive alternative for the children.

¶ 49    Goudie noted that not every statutory factor weighed in favor of the adoption "100 percent." Specifically, she suggested that the "uniqueness of the child and the family" factor weighed in Smith's favor because this case presents a "very unique situation." Goudie explained that she had not had a chance to observe Smith with the girls, and she noted that Smith has attended every court date so that the trial court would know that he does not want to give up his girls. Nevertheless, Goudie stated that, when the ten statutory factors are considered and applied to the facts in this case, "it probably would sway towards allowing the adoption."

¶ 50    Smith testified that he only yelled in the girls' presence on two occasions. Once when two of his friends had been murdered. The second time was when Elizabeth kicked him out of the car. Smith stated that he is against spanking and that neither he nor Elizabeth ever touched

the children in that way. He believed that an adult should be able to reason with his or her children. Smith further testified that Teanna had lived with Elizabeth (and with Smith when he was out of prison and living with Elizabeth) for long periods of time from the time she was a baby until she turned 14. Smith stated that he had concerns about Teanna's safety with Grzych because of some of the men Grzych had at her home.

¶ 51 Smith stated that, if the court were to terminate the guardianship, the children would live with him. He testified that he had "undying love" for his children. He claimed to have 30 nieces and nephews, including 21 nieces who are the same age as Ava and Sophia. Smith testified that these children would welcome Ava and Sophia when they meet. When asked whether he was a proper person for his girls to live with, Smith responded "I'm the best. I'm the best father in this world because I never needed nothing from no one but Elizabeth. Our undying love was just that strong." He later stated "[w]hat other man got better qualities than me? He don't." Smith testified that he was angry at Grzych and Ochoa because they "kidnapped my kids."

¶ 52 Smith further testified that someone sent him a video from Brazil of a Mexican woman beating his daughters. He thought that some Mexican had sent him the tape because they thought Smith was "some old goofy nigger that could be extorted." He added that Mexicans extort each other. He claimed that, when he brought the matter to the attention of the police, he was charged with making a false statement.

¶ 53 On cross-examination, Smith admitted that he had harmed people while he was in prison.

¶ 54 The trial court denied Grzych and Ochoa's petition to terminate Smith's parental rights and to adopt the children. The court stated that it was legally bound to follow the best interests

- 15 -

of the child standard as articulated in the adoption statute, which give great weight to the specific needs of the child. The court acknowledged that "[t]he evidence in this case indicates that the guardians have provided a loving and nurturing environment for the minor children." The court noted that it did not have an opportunity to speak to the children, as neither child was called as a witness and neither party asked the court to conduct an *in camera* interview with the children. Accordingly, the court gave "great weight" to the reports of the guardian *ad litem.* The court noted that those reports "indicate that the minor children still miss their father, still ask about their father, and are unaware as to the reasons behind their father's absence." The court found that, "[p]articularly in light of the fact that the children have lost their mother due to illness, *** the consequences of losing their father as well would be a harm far greater than the alternative." For that reason, the court found it is not in the best interests of the children that Smith's parental rights be terminated.

¶ 55        After issuing its ruling, the trial court addressed Smith's pending motion to reconsider the court's finding of unfitness. The court told Smith's counsel that it "would deem [the motion] as moot at this point," but it noted that "that's something for you to decide." The court asked Smith's counsel whether he was withdrawing his motion to reconsider. In response, Smith's counsel stated, "I think it's moot. So yes, I will." The court then noted for the record that Smith's motion to reconsider had been withdrawn on the oral motion of his counsel.

¶ 56        This appeal followed.

¶ 57                                     II. ANALYSIS

¶ 58        Grzych and Ochoa argue that the trial court erred when it denied their petition to adopt

Ava and Sophia. They maintain that the evidence demonstrates that terminating Smith's parental rights and allowing the adoption would be in the children's best interests.

¶ 59    When determining whether termination of parental rights is in a child's best interest, a court must consider the following factors in the context of the child's age and developmental needs: (1) the child's physical safety and welfare; (2) the development of the child's identity; (3) the child's familial, cultural and religious background and ties; (4) the child's sense of attachments, including love, security, familiarity, continuity of affection, and the least disruptive placement alternative; (5) the child's wishes and long-term goals; (6) the child's community ties, including church, school, and friends; (7) the child's need for permanence, including the need for stability and continuity of relationships with parent figures and siblings; (8) the uniqueness of every family and child; (9) the risks related to substitute care; and (10) the preferences of the person available to care for the child. 705 ILCS 405/1–3 (4.05) (West 2022). No single factor is dispositive. *In re Austin W.*, 214 Ill. 2d 31, 50 (2005).

¶ 60    A trial court's decision to terminate parental rights involves factual findings and credibility assessments that the trial court is in the best position to make. *In re Katrina R.*, 364 Ill. App. 3d 834, 842 (2006); *In re B.B.*, 386 Ill. App. 3d 686, 698 (2008). The trial court is in the best position to observe the conduct and demeanor of the witnesses. *In re B.B.*, 386 Ill. App. 3d at 698. Accordingly, "a trial court's determination that it is in a child's best interest to terminate the rights of his or her parent is given great deference and will not be reversed on appeal unless it is contrary to the manifest weight of the evidence." *In re D.M.*, 298 Ill. App. 3d at 574, 581 (1998).

¶ 61    A factual finding is against the manifest weight of the evidence only if the opposite

conclusion is clearly evident or the determination is unreasonable, arbitrary, and not based on the evidence presented. *Id.* Findings are against the manifest weight of the evidence when an opposite conclusion is clearly apparent from the record. *McAllister v. Illinois Workers' Compensation Comm'n*, 2020 IL 124848, ¶ 30; *In re D.D.*, 2022 IL App (1st) 220410, ¶ 65. Although reviewing courts are reluctant to conclude that a determination is against the manifest weight of the evidence, we will not hesitate to do so when the clearly evident weight of the evidence compels an opposite conclusion. *McAllister*, 2020 IL 124848, ¶ 30; *D.D.*, 2022 IL App (1st) 220410, ¶ 65.

¶ 62         Here, the overwhelming weight of the evidence and all of the statutory factors favor granting the adoption petition. The testimony of the guardian *ad litem* and of the petitioners' witnesses establishes that the children are safe and well-cared for by Grzych and Ochoa. They identify as members of Grzych and Ochoa's family and are deeply attached to Grzych and Ochoa, and also to Erica and Teanna, whom they consider to be their sisters. The children are also attached to their maternal grandmother and other members of Grzych's and Ochoa's extended family. They are loved and secure in their family home. Grzych and Ochoa take care of the children's daily needs, they work with the children's teachers to help them make progress at school, and they have enrolled the children in various extracurricular activities. Grzych and Ochoa also consulted with doctors to treat Ava's medical condition and obtained long-term grief counseling for the girls following the death of their mother.

¶ 63         Allowing the children to stay with Grzych, Ochoa and the other members of the family would satisfy the children's need for permanence, stability, and the continuity of their relationships with their parent figures and with Erika and Teanna. The children have lived with

Grzych and Ochoa for the past seven years, which represents the majority of their lives. They have known no other home since Sophia was four years old and Ava was two years old. They have only a few memories of their father from their early childhood. Removing the children from their home would be far more disruptive than allowing them to stay there.

¶ 64 The evidence further shows that allowing Smith to retain his parental rights, block the adoption, and assume decision-making authority in regard to the children would pose substantial risks. Smith has an extensive criminal history. He has been convicted of multiple felonies, including violent felonies. Most significantly, he has been convicted and incarcerated for battering both the children's mother as well as his girlfriend. In addition, an order of protection was entered against him (and was subsequently extended for two years) after he allegedly threw Grzych across a room in front of the children while she attempted to pick them up at his mother's house and later threatened Grzych and Ochoa. Although a jury found that the evidence of Smith's conduct was insufficient to convict him of the crime of battery, a trial judge found the evidence sufficient to issue an order of protection. Moreover, it is undisputed that Smith has yelled in front of the children. The children felt scared during at least one of these incidents.

¶ 65 There was evidence that Smith threatened witnesses at the courthouse, including a Kankakee City police officer. He has been incarcerated repeatedly and has spent 17 of his 43 years in prison. After he is released, he frequently ends up back in prison due to either a parole violation or his conviction of another offense. Smith clearly has a volatile personality and a bad temper, and he has trouble controlling his emotions and impulses. These shortcomings were on full display during the trial court proceedings. Almost every page of the trial transcript shows

Smith interrupting the testimony of other witnesses, either by angrily blurting out insults and expletives, disputing or otherwise commenting on the witness testimony, or rambling incoherently. Both the trial court and Smith's lawyer repeatedly told him to stop, to no avail. After exhibiting superhuman patience with Smith for the bulk of the trial, the trial court finally had him removed from the courtroom for a portion of the proceedings.

¶ 66 Smith appears to love his children and he has expressed a strong desire to get them back. However, Smith's lack of interest in supervised visitation following the guardianship proceeding undercuts these claims to a certain extent. In any event, we are required to consider the children's best interests, not only Smith's desires. Although Smith has never been accused of physically abusing the children, his history of violence and his inability to control his emotions and impulses could pose a risk to the children's welfare. Smith was convicted of battering the children's mother, and some of his angry outbursts have occurred in the children's presence. He has never had to take care of the children on his own. His background, including his admitted drug use and his history of violence and repeated incarceration, suggests that he might not be able to take care of the children nearly as well as Grzych and Ochoa have.

¶ 67 Although the guardian *ad litem* testified that the majority of the statutory best interest factors favored Grzych and Ochoa, she suggested that two of the factors arguably supported Smith: the "children's wishes and long-term goals" and the "the uniqueness of every family and child." We disagree. Although the children expressed a wish to *see* their father, they did not want to *live* with him. To the contrary, they repeatedly and unequivocally told Goudie that they wanted to live with Grzych and Ochoa long term. Accordingly, denying the adoption petition

would contravene the children's wishes.

¶ 68    In addition, the guardian *ad litem* misunderstood and misapplied the "uniqueness of every family and child" factor. She opined that this factor arguably favored Smith because this case presents a "unique situation." She found the situation to be unique because she had no opportunity to observe Smith interacting with his children or to evaluate his parenting style due to the order of protection. However, the statute requires the court to consider the uniqueness of every *family and child*, not the uniqueness of the *evidence* (or lack thereof) available to the guardian *ad litem*. The statute contemplates that some children or families might have unique qualities that must be considered in determining the best interest of the child. It does not address the quantum of evidence presented to the guardian *ad litem.*

¶ 69    Moreover, the trial court appeared to deny the adoption petition based primarily (if not entirely) on the children's wishes. However, as noted above, no single statutory factor is dispositive. In any event, the trial court gave scant attention to the children's expressed desire to stay with Grzych and Ochoa long term. Accordingly, it failed to appreciate that the "wishes of the child" factor actually favored the granting of the petition.

¶ 70    For all these reasons, it is clearly apparent that the petition for adoption and for the termination of Smith's parental rights should have been granted. The trial court's denial of the petition was against the manifest weight of the evidence.

¶ 71    One further point bears mentioning. In his brief on appeal, Smith merely attacks the trial court's finding of unfitness. His brief contains no argument in support of the trial court's ruling

as to the best interests of the children and ignores the petitioners' arguments on that issue.[1] The trial court's fitness ruling is not at issue and may not be relitigated in this appeal. Smith waived any challenge to the fitness ruling by explicitly withdrawing his motion to reconsider that ruling after the trial court denied the adoption petition. Moreover, even if he had preserved the issue below, he may not address the issue in this appeal because he has not cross-appealed the trial court's finding of unfitness. See *Martis v. Grinnell Mutual Reinsurance Co.*, 308 Ill. App. 3d 1017, 1023 (2009) ("In the absence of a cross-appeal, an appellee will not be permitted to challenge or ask the reviewing court to modify a portion of the trial court's order," and "the reviewing court is confined to the issues presented by the appellant").

¶ 72    Smith also asks us to consider documents that were not admitted into the record, including records of Smith's sessions with a therapist and a 2017 "certificate of completion" of a course in an "integrated cognitive behavior change program." The trial court's refusal to admit these documents was the primary basis of Smith's motion for reconsideration. We will not consider these documents because they are outside the record. However, if we were to consider the documents, they would have no impact on our decision because they do not demonstrate that Smith made an effort to address his anger issues for the sake of his children. Smith concedes that

---

[1] In his brief, Smith's counsel states that he possibly did not "spend the time that [he] should on this case." We agree with his self-assessment. Counsel's complete failure to address the issue presented in this appeal and to include relevant citations to the record has required this court to comb through the record looking for evidence supporting the trial court's judgment, thereby creating substantially more work for this court and requiring us to expend judicial resources on something that should have been done by counsel. We would ordinarily refuse to do counsel's work for him and would strike his brief for failing to comply with the Supreme Court rules governing the content of appellate briefs. We decline to take that drastic step in this case due to the gravity of the issues presented. However, we caution counsel to avoid making such fundamental errors in the future.

he went to therapy for his own benefit in order to deal with his depression that was caused by his inability to see his children, not in order to change behaviors that might negatively impact the children. Moreover, the "certificate of completion" does not explain the nature of the course that Smith completed.

¶ 73                                                    III. CONCLUSION

¶ 74        For the foregoing reasons, we reverse the trial court's denial of the petitioners' petition for adoption and termination of Smith's parental rights and remand the matter to the trial court to enter an order granting the petition for adoption.

¶ 75        Reversed; cause remanded.